

Tagged Opinion

**ORDERED in the Southern District of Florida on December 05, 2006.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:                                              CASE NO: 03-32158-BKC-PGH

JAMES F. WALKER,                                    Chapter 7 Proceedings
    Debtor.
_____/

Gary J. Rotella & Assoc., P.A.,
as Assignee of Ferrell Law's
Summary of Final Application
for Compensation of Fees &
Costs of Former Chapter 7
Trustee's Counsel, et.al,
    Plaintiffs,                                     Adv. Proc.:06-01610-PGH-A

vs.

Susan Lundborg,
    Defendant.
_____/

### FINAL ORDER GRANTING DEFENDANT SUSAN LUNDBORG'S MOTION FOR SUMMARY JUDGMENT DISMISSING AMENDED COMPLAINT FOR AWARD OF ACTUAL DAMAGES, INCLUDING ATTORNEY'S FEES, COSTS AND PUNITIVE DAMAGES, PURSUANT TO 11 U.S.C. §362(k)(1), 11 U.S.C. §105(a) AND THE COURT'S INHERENT CONTEMPT POWERS

**THIS MATTER** came before the Court on August 21, 2006 upon

Susan Lundborg's ("Lundborg" or "Defendant") *Motion for Summary Judgment Dismissing Amended Complaint for Award of Actual Damages, Including Attorney's Fees, Costs and Punitive Damages, Pursuant to 11 U.S.C. §362(k)(1), 11 U.S.C. §105(a) and the Court's Inherent Contempt Powers* (the "Motion For Summary Judgment")[Adv.C.P.29].[1] Gary J. Rotella, P.A., as Assignee of Ferrell Law's Summary of Final Application for Compensation of Fees & Costs of Former Chapter 7 Trustee's Counsel ("Rotella As Assignee") and Debtor, James F. Walker, as Assignee of the Debtor's Estate's interest in the Cat Cay Property ("Debtor As Assignee")[2] filed the Complaint that initiated this adversary proceeding on June 20, 2006. An *Amended Complaint for Award of Actual Damages Including Attorneys' Fees, Costs and Punitive Damages, Pursuant to 11 U.S.C. §362(k)(1), 11 U.S.C. §105(a) and the Court's Inherent Contempt Powers* ("Amended Complaint") [Adv.C.P.24] was filed August 7, 2006. Rotella As Assignee, Debtor As Assignee, and Gary J. Rotella & Associates, P.A. as unpaid administrative claim owner ("Rotella") (collectively,

---

[1] Documents filed in the instant adversary proceeding are herein designated "Adv.C.P.#". Documents filed in the main case are designated "C.P.#".

[2] To avoid confusion, this order's references to the Plaintiffs in their capacities as "assignees" are distinguished from references to them in their individual capacities. This order refers to "Rotella" to denote his capacity as counsel for Debtor, to "Rotella as Assignee" to denote his capacity as assignee of the Law Firm of Ferrell Law, P.A.'s Summary of Final Application for Compensation of Fees & Costs of Former Chapter 7 Trustee's Counsel, and to "Debtor As Assignee" to distinguish his capacity as assignee of the Debtor's Estate's interest in the Cat Cay Property from his individual capacity as Debtor.

"Plaintiffs") are listed as Plaintiffs in the first paragraph of the Amended Complaint.[3]  On November 2, 2006, Plaintiffs filed a *Partial Response to Defendant's [Motion for Summary Judgment]* [Adv.C.P.69] ("Response"). On November 7, 2006, Defendant filed a *Reply Brief in Support of [Defendant's Motion for Summary Judgment]* [Adv.C.P.70]. The parties filed a *Joint Stipulation of Undisputed Facts Re: [Defendant's Motion for Summary Judgment]* [Adv.C.P.54] on October 13, 2006.

## BACKGROUND

The Court takes judicial notice of the pleadings and proceedings in the main case.

1.    On April 25, 2003, James F. Walker ("Debtor") filed for relief under Chapter 7 of the Bankruptcy Code. *See* Petition [C.P.1].

2.    On May 27, 2003, the Debtor filed Schedules [C.P.10] showing an insolvent estate with $101.00 in assets and $1,095,257.28 in liabilities. None of the scheduled liabilities was indicated by the Debtor to have been contingent, unliquidated, or disputed.

3.    Debtor's Schedules listed real property known as Lot 32, North Cat Cay, Bahamas (the "Cat Cay Property") as exempt on the basis that the property was held by the Debtor and his wife as joint tenants. However the Court sustained Linda Walden, the former Trustee's ("Former Trustee Walden") objection to this classification and found that the Cat Cay Property was not exempt. *See Memorandum Order Sustaining Trustee's Objection to Debtor's Real Property Claimed As Exempt* [C.P.228] entered on February 6, 2004.

---

[3] The Court notes that the first paragraph of the Amended Complaint adds Rotella as a plaintiff, but the caption of the Amended Complaint does not list Rotella as a plaintiff.

4.    In 1996 Eleanor C. Cole, a judgment creditor of the Debtor, sought and received relief in the courts of the Bahamas for a judicial sale of the Cat Cay Property to satisfy her judgment.  A September 3, 2002 Bahamian Court order authorized the sale of the Cat Cay Property to Lundborg.  The sale, although authorized by the Bahamian Court, was not completed prepetition. *See Bahamian Sale Order* dated September 3, 2002 [Amended Complaint Ex. "B"].

5.    On November 14, 2004 after a five day hearing, the Court found cause to remove Former Trustee Walden from the position of Chapter 7 Trustee.[4]  Deborah Menotte was appointed as Trustee on November 18, 2004, and she resigned on December 6, 2004 because she was not disinterested. Patricia Dzikowski ("Trustee") was appointed successor Trustee on December 6, 2004.

6.    On May 12, 2005, Lundborg timely filed Proof of Claim No. 5 ("Lundborg's Proof of Claim"), wherein she asserted claims against the Debtors' bankruptcy estate ("Estate") for expenses incurred with respect to the Cat Cay Property.

7.    On May 27, 2005, Debtor filed an *Emergency Motion To Strike Susan Lundborg's Proof Of Claim; Motion for Compensatory And Punitive Sanctions Against Lundborg, Wernick, Lubell, and Hughes, LLP Pursuant To 28 U.S.C. § 1927 and 11 U.S.C. § 105 For Filing Fraudulent Proof Of Claim; and Motion To Immediately Refer Lundborg, Wernick, and Lubell To United State's [sic] Attorneys Office For Criminal Prosecution For Filing Fraudulent Proof Of Claim Pursuant to 18 U.S.C. §§ 152 and 3571* [C.P. 926] ("Debtor's Motion to Strike Claim"). Debtor's Motion to Strike Claim sought sanctions against Lundborg and her counsel, Aviva Wernick and Daniel Lubell, for Lundborg's having filed an allegedly fraudulent Proof of Claim. On July 29, 2005, the Court *sua sponte* struck the criminal referral portion of Debtor's Motion to Strike Claim. *Sua Sponte Order* [C.P. 1109]. *See infra* ¶ 17.

8.    On June 2, 2005, Debtor filed an *Objection to Proof of*

---

[4] The Court's orders removing the Chapter 7 Trustee were affirmed on appeal to the District Court. The District Court's order is currently on appeal to the Eleventh Circuit.

*Claim No. 5* [C.P. 935] ("Debtor's Objection to Claim"). Debtor's Objection to Claim was a one-page filing that incorporated Debtor's Motion to Strike Claim in its entirety without adding any additional allegations.

9.   On June 9, 2005, Trustee filed an *Objection to [Lundborg's] Claim No. 5* [C.P. 945] ("Trustee's Objection to Claim"). Trustee's Objection to Claim disclosed that the Trustee had entered into a settlement agreement with the Debtor ("Settlement Agreement"), whereby the Estate's "right title and interest, subject to any and all claims, liens, and encumbrances, in the Cat Cay Property located in the Bahamas is being conveyed to the Debtor." Trustee's Objection to Claim maintained that to the extent Lundborg had any claim(s) secured by the Cat Cay Property, that claim would serve as an encumbrance against the real property, that claim would follow the real property, and that claim would be enforceable against it in the Bahamas. Trustee's Objection to Claim was resolved by Lundborg withdrawing her Proof of Claim as part of an overall settlement between Trustee and Lundborg. *See infra* ¶ 14.

10.   On June 15, 2005, Trustee filed a *Motion By Trustee Patricia Dzikowski to Approve Settlement and Sale of the Bankruptcy Estate's Right Title and Interest in the Bahamian Real Property at Cat Cay, Lot 32* [C.P.953] ("Trustee's Motion to Approve Sale") which sought the Court's approval of, among other things, sale of the Estate's interest in the Cat Cay Property to Rotella and the Debtor. Trustee's Motion to Approve Sale included as Exhibit "A" the Settlement Agreement between Trustee and Debtor dated March 9, 2005.

11.   On July 1, 2005, the Law Firm of Ferrell Law, P.A. ("Ferrell") filed a final application seeking compensation and expenses in the amount of $629,239.86 for Ferrell's representation of Former Trustee Walden. On August 18, 2005 the Court entered an *Order Awarding Attorneys' Fees and Costs* ("Ferrell Fee Order") [C.P.1124] to Ferrell in the amount of $536,552.36 (the "Ferrell Administrative Claim"). The *Ferrell Fee Order* noted that Rotella was the owner by assignment of the Ferrell Administrative Claim. The *Ferrell Fee Order* permitted Rotella to credit bid the full amount of the Ferrell Administrative Claim at any sale of the

Estate's assets. On August 23, 2005, the Court entered an *Order of Substitution of Claim* [C.P.1125] which substituted Rotella, transferee for Ferrell, as the claimant for this award of fees. However Rotella had disclosed in open Court as early as August 10, 2005 that he had acquired the Ferrell Administrative Claim. *See* Aug. 10, 2005 Hearing Tr. at p. 186 [C.P.1205].

12. On July 14, 2005, Rotella and the Debtor filed adversary proceeding number 05-3127-BKC-PGH-A against the Trustee seeking attorneys' fees and costs in the amount of $637,559.68 allegedly incurred for services rendered to, and on behalf of, the Estate. The adversary proceeding was settled after resolving the objection of the United States Trustee, and on August 18, 2005 the Court entered an *Order Awarding Attorneys' Fees and Costs (*"Rotella Fee Order")[Adv. Proc. 05-3127, C.P.7] to Rotella in the amount of $220,492.35 ("Rotella Administrative Claim"). The *Rotella Fee Order* permitted Rotella to credit bid the full amount of the Rotella Administrative Claim at any sale of the Estate's assets.

13. During July 2005, the Debtor and Lundborg filed sanctions motions against each other for alleged violations of the automatic stay in connection with prosecution of litigation in the Bahamas. *See* Debtor's *Motion for Contempt and Sanctions for Violations of 11 U.S.C. § 362 and Enforcement of Automatic Stay Against Susan Lundborg* ("Debtor's First Stay Sanctions Motion") [C.P. 1004] and Lundborg's *Response to* [Debtor's First Stay Sanctions Motion] *and Cross-Motion Against Debtor and Debtor's Counsel for Contempt and Sanctions for Violations of 11 U.S.C. § 362 and 28 U.S.C. § 1927 and Enforcement of the Automatic Stay* [C.P.1071]. The *Order Denying Susan Lundborg's Cross-Motion Against Debtor and Debtor's Counsel for Contempt and Sanctions for Violation of 11 U.S.C. § 362 and 28 U.S.C. § 1927 and Enforcement of the Automatic Stay* [C.P.1182] determined that the Debtor had not violated the automatic stay. However the Court found that Lundborg had willfully violated the automatic stay by authorizing her Bahamian counsel to file two separate notices appealing the Bahamian Court orders of December 7, 2004 and February 28, 2005. *See Order Granting Debtor's Motion for Contempt and Sanctions For Violation of 11 U.S.C. §362 and*

6

*Enforcement of the Automatic Stay Against Lundborg* [C.P.1138] ("Order Determining Stay Violation"); *see infra* ¶ 17.

14.  On August 2, 2005, Trustee filed a *Motion to Approve Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P.1085] ("Trustee's Motion to Approve Lundborg Settlement"), which included as Exhibit "A" a *Stipulation for Resolution of Trustee's Objection to Claim No. 5 and Motion to Dismiss Adversary Proceeding* ("Stipulation"). The Stipulation, among other things, provided for mutual releases between the Trustee and the Estate, and Lundborg. On August 5, 2005, the Debtor filed an *Objection to Stipulation for Resolution of Trustee's Objection to Claim No. 5 and Motion to Dismiss Adversary Proceeding* [C.P.1104] ("Debtor's Objection to Lundborg Settlement") which contained Debtor's redlined version of the Stipulation. Among other things, Debtor's Objection to Lundborg Settlement proposed that language releasing Lundborg from the automatic stay be deleted from the Stipulation. Debtor's Objection to Lundborg Settlement also stated that Debtor would raise *ore tenus* objections on a point by point basis at the August 10, 2005 hearing on Trustee's Motion to Approve Lundborg Settlement. Debtor's *ore tenus* objections raised at the hearing concerned the timing of Lundborg's stay release and the related timing of the Court's consideration of other matters, primarily Trustee's Motion to Approve Sale. Debtor raised no objection to the Stipulation based upon the fraud allegations contained in Debtor's Motion to Strike Claim. Debtor's objections were resolved in open Court at the August 10, 2005 hearing in a manner that was satisfactory to the Debtor at the time. *See Order Striking First Rule 60(b) Motion* at 13-26. On August 29, 2005 the Court entered the *Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P.1145](the "Order Approving Lundborg Settlement"). In addition to approving the conditional dissolution of stay and the release of claims against Lundborg, the *Order Approving Lundborg Settlement* stated that Lundborg would not be prejudiced from bidding at a sale of the Estate's interest in the Cat Cay Property. It also provided for Lundborg's withdrawal of her Proof of Claim which eliminated the need for an evidentiary hearing on any

objection to the Proof of Claim.

15.    On September 1, 2005, the Court entered *an Order Granting Motion to Approve Settlement and Sale as Modified* [C.P. 1153] (the "Order Approving Settlement and Sale") which approved the August 25, 2005 sale of the Estate's interest in the Cat Cay Property "to the extent same exists" to Debtor and Rotella for the sum of $813,044.71, which represented the total of Rotella's credit bid of $757,044.71 - the total amount due on Rotella's administrative claims - plus $56,000 in cash. *Id.* ¶¶ 1 and 3. As part of the Settlement Agreement, Debtor and Rotella released, waived and/or subordinated any and all claims against the Estate and Trustee. The Settlement Agreement also provided for Trustee's dismissal of the adversary proceeding in which Trustee objected to Debtor's discharge.[5]

16.    On June 16, 2006, more than ten months after the hearing on Trustee's Motion to Approve Lundborg Settlement, Rotella As Assignee and Debtor As Assignee filed a *Motion for Relief From August 29, 2005 Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg (C.P.1145) Pursuant to Rule 60(b), Fed.R.Civ. P.* [C.P. 1587] ("First Rule 60(b) Motion"). The First Rule 60(b) Motion sought to set aside the August 29, 2005 *Order Approving Lundborg Settlement* based upon allegations that the Trustee's Stipulation with Lundborg had been obtained by fraud and/or fraud upon the Court. In the alternative, the First Rule 60(b) Motion sought to vacate paragraph 4 of the *Order Approving Lundborg Settlement,* which provided for dissolution of the stay so that Lundborg could pursue her interests relating to the Cat Cay Property in the Bahamas. As discussed below, the Court entered an *Order Granting [Lundborg's Motion To Strike [the First Rule 60(b) Motion]]* [C.P.1735]. *See infra* ¶¶ 19, 22, and 24.

17.    On June 20, 2006 the Court entered a *Memorandum Order Granting in Part and Denying in Part Susan Lundborg's*

---

[5] On October 6, 2003, Former Trustee Walden filed a complaint objecting to Debtor's discharge pursuant to 11 U.S.C. § 727. This lawsuit was assigned adversary proceeding number 03-3302-BKC-PGH-A. This lawsuit was dismissed two years later on September 1, 2005 pursuant to the Settlement Agreement. The Debtor received his discharge on September 21, 2005.

*Motion to (1) Quash Subpoena and Enter Protective Order, and for Contempt and Sanctions Against Debtor and His Counsel for Violation of the Mediation Order; (2) Dismiss All Sanctions Motions of Debtor and His Counsel Against Her; and (3) Enlarge Her Time to Complete the Record and Issues with Respect to Appeals Affected by Debtor's Sanction Motions* [C.P.1589] ("Memorandum Order"), which ruled upon a series of sanctions motions and cross-motions between Lundborg, and Rotella and the Debtor. The *Memorandum Order* determined that the Debtor lacked standing to object to, or move to strike, Lundborg's Proof of Claim and consequently denied the sanctions portion of Debtor's Motion to Strike Claim. *Memorandum Order* at 18-28. The Debtor was also found to be without standing to seek sanctions for Lundborg's violation of the stay because the Debtor was not a person aggrieved by Lundborg's violation of the stay against an interest in property that was owned by the Estate when the stay violations occurred. In addition, the *Memorandum Order* determined that any claims for damages to the Estate resulting from Lundborg's violation of the automatic stay, including any administrative attorneys' fees, had been released by the Trustee pursuant to the *Order Approving Lundborg Settlement*. Therefore the Court denied the damages portion of Debtor's First Stay Sanctions Motion. *Id.* at 33-37; *see supra* ¶ 13. The *Complaint for Award of Actual Damages Including Attorneys' Fees, Costs and Punitive Damages, Pursuant to 11 U.S.C. §362* ("Complaint")[Adv.C.P.1] which initiated the instant adversary proceeding was filed on June 20, 2006, the same day that the Court entered the *Memorandum Order* in the main case.

18.    On June 19, 2006, Debtor filed a *Motion for Award of Damages, Including Attorneys' Fees, Costs and Punitive Damages Against Susan Lundborg for Her Willful Violation of the Automatic Stay Provision of 11 U.S.C. §362* [C.P. 1592] ("Debtor's Second Stay Sanctions Motion"). Debtor's Second Stay Sanctions Motion was denied as moot based upon the *Memorandum Order's* determination that the Debtor lacked standing to seek the relief requested. *See Order Denying [Debtor's Second Stay Sanctions Motion]* [C.P. 1744]("Order Denying Debtor's Second Stay Sanctions Motion") entered on September 21, 2006.

19. On July 18, 2006, Lundborg filed a *Motion to Dismiss [Complaint]* ("Motion to Dismiss") [Adv.C.P.9]. Also on July 18, 2006, Lundborg filed a *Motion to Strike [the First Rule 60(b) Motion]* ("Lundborg's Motion to Strike Rule 60(b) Motion") [C.P.1653]. Both of these motions were set for hearing for August 8, 2006.

20. On July 25, 2006, Lundborg filed a *Motion for Stay of Proceedings and Discovery* as to the instant adversary proceeding and the First Rule 60(b) Motion ("Motion to Stay Discovery") in both the adversary and in the main case [C.P. Adv.11; C.P. 1665]. These motions were also set for hearing for August 8, 2006.

21. On August 7, 2006 at 4:24 P.M., the day before the hearing on Lundborg's Motion to Dismiss, Plaintiffs filed the Amended Complaint. The Amended Complaint added 11 U.S.C. § 105(a) and the Court's inherent power as grounds for the relief originally sought solely pursuant to 11 U.S.C. § 362(k)(1).

22. The following orders were entered pursuant to the August 8, 2006 hearing: 1) *Order Denying Without Prejudice Lundborg's Motion to Dismiss* ([Adv. C.P.25]; 2) *Order Granting [Motion to Stay Discovery]* [Adv.C.P.26]; 3) *Order Granting [Motion to Stay Discovery]* [C.P.1707]; and 4) *Order Granting [Lundborg's Motion to Strike Rule 60(b) Motion]* ("Order Striking First Rule 60(b) Motion") [C.P.1735].

23. On August 18, 2006, Rotella and Debtor filed a *Motion for Relief from Order Pursuant to Rule 60(b)(1) and (6), Fed.R.Civ. P.* (the "Second Rule 60(b) Motion") [C.P. 1712], in which Rotella and Debtor sought to modify the September 1, 2005 *Order Approving Settlement and Sale* to reflect that Rotella and Debtor's offer for the Estate's interest in the Cat Cay Property was only $56,000 in cash rather than $813,044.71 in cash and credit bids. On September 6, 2006, the Court entered a *Corrected Order Denying James F. Walker, and Gary J. Rotella & Associates, P.A.'s Motion for Relief from Order Pursuant to Rule 60(b)(1) and (6), Fed.Civ. P.* [C.P. 1733] ("Order

Denying Second Rule 60(b) Motion"). [6]

24.  On September 8, 2006, the Court entered the *Order Striking First Rule 60(b) Motion*, wherein the Court found that the movants had not been prevented from fully presenting their case by any fraud, misrepresentation or other misconduct of Lundborg so as to warrant relief from the Court's final *Order Approving Lundborg Settlement* entered one year earlier. *See Order Striking First Rule 60(b) Motion* at 10-13.[7]

25.  On September 14, 2006, instead of timely filing a Response to Defendant's Motion for Summary Judgment per the Court's *Order Continuing Pretrial Conference and Setting Briefing Schedule* [Adv.C.P.30], Plaintiffs filed a *Motion for Default, or in the Alternative, Motion to Strike the Order Continuing Pretrial Conference and Setting Briefing Schedule on Defendant Susan Lundborg's Motion for Summary Judgment, or to Extend Time for Plaintiffs to Respond to Defendant's Motion for Summary Judgment, and to Grant Plaintiffs Adequate Time for Discovery in Response to Defendant Susan Lundborg's Motion for Summary Judgment* ("Default Motion")[Adv. C.P.32]. On September 26, 2006, the Court entered an *Order Denying in Part and Granting in Part the Alternative Relief Sought in Motion for Default* [Adv. C.P.42] wherein the Court granted Plaintiffs' request for an extension of time to submit their response brief. The remaining relief requested in Plaintiffs' Default Motion was set for hearing for October 6, 2006. The hearing was continued until October 18, 2006 as requested in Plaintiffs' *Emergency Motion to Continue Hearing.* On October 23, 2006, the Court denied the remaining relief requested in Plaintiffs' Default Motion including Plaintiffs' request for additional time to conduct discovery. *See Order* [Adv. C.P. 59].

---

[6] Rotella and Debtor sought reconsideration of the Court's Order Denying Second Rule 60(b) Motion. While the Court granted reconsideration in part by vacating an incorrect statement of dicta contained in the order, the Court reaffirmed the holding of the Order Denying Second Rule 60(b) Motion. See C.P.1740 and 1753.

[7] The Court denied Rotella As Assignee and Debtor As Assignee's Motions for Reconsideration of the *Order Striking First Rule 60(b) Motion*. *See* C.P. 1741, 1745, 1746 and 1750.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §157.

## I.    *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

In considering a motion for summary judgment, "the court's

12

responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (*citing Anderson*, 477 U.S. at 248). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*citing* Fed. R. Civ. P. 1). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir. 1988).

## II. Defendant's Motion for Summary Judgment and Plaintiffs' "Partial" Response

The Amended Complaint represents *at least the sixth*[8] direct

---

[8] Debtor and Rotella's efforts include: 1) May 27, 2005 Debtor's Motion to Strike Claim; 2) June 16, 2006 Rotella As Assignee and Debtor As Assignee's First Rule 60(b) Motion which sought to set aside the Court's order approving the Estate's release of claims against Lundborg; 3) September 18, 2006 Rotella as Assignee, and Debtor as Assignee's *Motion to Reconsider, Alter, Amend and/or Vacate September 8, 2006 Order, Pursuant to Rule 59, Fed. R. Civ.P. and/or Relief From Said Order Pursuant to Rule 60(b)1 and 60(b)(6), Fed. R. Civ.P.* [C.P. 1741] which expounded upon the allegations contained in the First Rule 60(b) Motion; 4) July 13, 2005 Debtor's First Stay Sanctions Motion; 5) June 19, 2006 Debtor's Second Stay Sanctions Motion; and 6) the Amended Complaint.

or indirect attempt by Debtor, Rotella, Debtor As Assignee and/or Rotella As Assignee, to seek sanctions, compensatory damages and punitive damages against Lundborg for her having filed an allegedly fraudulent Proof of Claim and/or for her having violated the automatic stay by pursuing litigation in the Bahamas concerning the Cat Cay Property. Defendant argues that she is entitled to summary judgment as a matter of law on the following grounds: Plaintiffs' lack of standing including, but not limited to, Rotella and Rotella As Assignee not being "individuals" as required for damages pursuant to 11 U.S.C. § 362(k), *res judicata,* law of the case, release, and satisfaction.

Plaintiffs' Response to Defendant's Motion for Summary Judgment appears to be a badly edited version of an appellant brief as evidenced by the Response's references to this proceeding as "the instant appeal" and to the Plaintiffs as the "Appellant". *See Response* ¶¶ 49 and 70. It is therefore not surprising that Plaintiffs' Response is generally *unresponsive* to the legal arguments presented in Defendant's Motion for Summary Judgment. As previously stated by the Court, this case has dragged on unnecessarily for three and one-half years in part due to the filing of briefs similar to Plaintiffs' Response, i.e., the filing of sloppy "kitchen sink" briefs that are unfocused and oftentimes incoherent. Rather than Plaintiffs

14

using the extended time granted by the Court to respond to the legal arguments in the Defendant's Motion for Summary Judgment,[9] Plaintiffs' Response inappropriately attacks final orders of this Court which are now on appeal to the District Court. The Response's lengthy arguments regarding the Court's analysis in its final orders are misdirected here. The Court may not and will not address arguments regarding the propriety of its final orders that are now on appeal.

The Response, which is designated by the Plaintiffs as a "partial" Response, maintains that Plaintiffs cannot formulate a complete response without conducting additional discovery. "[Courts have] wide discretion in deciding whether a party is entitled to an opportunity for discovery." *Lavender v. Kearney*, 2006 WL 2971325, at *3 (11th Cir. 2006).[10] "And under Federal

---

[9] Although it is the Court's practice to allow respondents approximately 20 days to respond to a motion for summary judgment, the Plaintiffs in this matter have had ten weeks in which to prepare and file a Response to the Motion for Summary Judgment. The first deadline set for Plaintiffs' Response was September 14, 2006. See August 24, 2006 Order Continuing Pretrial and Setting Briefing Schedule [Adv. C.P.30]. On September 14, 2006, Plaintiffs' filed their Default Motion requesting, among other things, an extension of time for filing the Response. The Court granted Plaintiffs' request and set October 6, 2006 as the second extended deadline for Plaintiffs' Response. See September 26, 2006 Order Granting in Part and Denying in Part [Plaintiff's Default Motion] [Adv.C.P.42]. The Court conducted a hearing on the balance of the relief sought in the Default Motion on October 18, 2006. On October 23, 2006, the Court set a third deadline when it granted an additional extension of time until November 2, 2006 for Plaintiffs to file their Response. See Order [Adv.C.P.59].

[10] Indeed, "rule 56(f) shows that a court may grant summary judgment without the parties having conducted discovery if the opponent has not sought discovery by making a motion under rule 56(f), or if the court has, in the valid exercise of its discretion, denied such a motion." *Reflectone, Inc., v. Farrand Optical Co., Inc.* 862 F. 2d 841,844 (11th Cir. 1989). *See also Salas v. Tillman,* 162 Fed. Appx. 918,922 (11th Cir. 2006) ("It is not, however, *per se* improper to grant summary judgment without providing the opponent an

15

Rule of Civil Procedure 56(f), a court may allow a plaintiff to conduct additional discovery upon a showing that it will enable him to rebut the summary judgment motion." *Id.* "A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Halbert Int'l, Inc., v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Plaintiffs' Response states that "it is highly likely that, at the very least, there will be numerous, additional material issues of fact and law in dispute with regards to [the Motion for Summary Judgment]." Response ¶87. Plaintiffs' Response also references Rotella's *Amended Affidavit in Support of [Motion for Default]* [Adv.C.P.57] ("Affidavit"), however said Affidavit fails to show how additional discovery would enable Plaintiffs to rebut the Motion for Summary Judgment's legal arguments and affirmative defenses of standing, *res judicata*, release, and satisfaction.

The Court has stated that in considering the Motion For Summary Judgment the Court will consider Plaintiffs' allegations regarding Lundborg's Proof of Claim as true, and the Court will take all reasonable inferences in favor of the Plaintiffs who are the nonmoving parties. *See Order* at 3 [Adv.C.P. 59]. Moreover, having been developed over three and a half years, the

opportunity to conduct discovery").

record in this case is extensive. The Motion for Summary Judgment is based upon the application of legal principles to that extensive record. "Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Halbert Int'l*, 157 F.3d at 1280. The Plaintiffs here have failed to demonstrate that additional discovery is needed to respond to the legal issues raised in the Motion for Summary Judgment. The Court's displeasure with the burdens engendered and the unnecessarily excessive costs already incurred in this case are well known to the parties. The amount of attorney's fees and costs, not to mention the expenditure of judicial resources, has been enormously wasteful. Allowing additional discovery would unnecessarily squander even more resources. Thus, in ruling upon Plaintiffs' Default Motion, the Court determined that the additional cost of conducting discovery on factual issues was unwarranted at this stage of the proceedings. *See Order* at 3 [Adv.C.P. 59]. The Response's contention that without additional discovery "it is virtually impossible for Plaintiffs to file a complete Response" (Response ¶12) is without merit. Thus after having had ten weeks to respond, Plaintiffs made a fully informed decision to file a "partial" response that *re-argues* Plaintiffs' need for factual discovery while failing to address

17

the legal arguments presented in the Motion for Summary Judgment.

Having taken judicial notice of the record and having reviewed the submissions of the parties, the Court finds that the material facts of this matter are not in dispute. For the reasons discussed below, the Court finds that entry of summary judgment in favor of the Defendant is appropriate as a matter of law.

**III.** *Law of Former Adjudication*

"Application of *res judicata* is central to the fundamental purpose of the judiciary-the conclusive resolution of disputes." *Curry v. Baker*, 802 F.2d 1302, 1310 (11th Cir. 1986) (*citing Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). "Finality 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" *Id.* (*quoting Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)(alterations in original)). "Under *res judicata*, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp*. 244 F.3d 1289, 1296 (11th Cir. 2001). Claim preclusion bars subsequent litigation when the following

18

conditions are met: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both cases involve the same parties or their privies; and (4) both cases involve the same causes of action. *Id.*

The law of the case doctrine is closely related to *res judicata*. "The [law of the case] doctrine is 'based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter' . . . [the] litigation should come to an end." *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978)(citations omitted).[11] "The doctrine of 'law of the case' is a rule of practice under which a rule of law enunciated by a federal court 'not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but (also) establishes the law which . . . [the court] itself will, normally, apply to the same issues in subsequent proceedings in the same case.'" *Id.* at 1289 (*quoting* 1B Moore's Federal Practice P 0.404(1)(2d ed. 1974)). While claim preclusion bars relitigation not only of claims raised, but also of claims that could have been raised, law of the case "applies only to issues that were decided in the former proceedings." *Id.* at 1290. "Nevertheless, 'the doctrine does mean that the duty of a lower

---

[11] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

court to follow what has been decided at an earlier stage of the case comprehends things decided by necessary implication as well as those decided explicitly.'" *Id. (quoting Carpa, Inc., v. Ward Foods, Inc.,* 567 F.2d 1316, 1320 (5th Cir. 1978)); *see also In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 n.3 (11th Cir. 1990).

Applying the elements for claim preclusion, the Court notes that it had competent jurisdiction to enter the orders on which it here relies for application of *res judicata* (the "Preclusive Orders")[12]. Furthermore, the Preclusive Orders are now final orders. Contrary to the unsupported argument repeatedly advanced in the Plaintiffs' Response, "[t]he federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata.*" *Hunt v. Liberty Lobby, Inc.,* 707 F.2d 1493, 1498 (D.C. Cir. 1983). Thus, for example, the *Memorandum Order* is a final order with *res judicata* effect despite the pendency of an appeal. Indeed the parties could not have taken their appeal and cross-appeal to District Court were it not a final order. The *Order Approving Lundborg*

---

[12]The Preclusive Orders include: *1) Rotella Fee Order;* 2) *Ferrell Fee Order;* 3)*Order of Substitution of Claim;* 4)*Order Approving Lundborg Settlement;* 5)*Order Approving Settlement and Sale;* 6) *Memorandum Order;* 7) *Order Denying Second Rule 60(b) Motion;* 8)*Order Striking First Rule 60(b) Motion;* and 9) *Order Denying Debtor's Second Stay Sanctions Motion.*

*Settlement* is also a final order.[13] While orders approving settlements are not final orders with *res judicata* effect as to the merits of the underlying claims, such orders are final orders as to the matters specified in the settlement. *See United States v. Ameritrade Terminals, Inc.* 177 Fed. Appx. 855, 858 (11th Cir. 2006); *Justice Oaks II*, 898 F.2d at 1549 (11th Cir. 1990); *Jones v. Texas Tech University*, 656 F.2d 1137, 1142 n.2 (5th Cir. 1981)("when fairly arrived at and properly entered into, (settlement agreements) are generally viewed as binding, final, and as conclusive of rights as a judgment")(*quoting Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976) (alterations in original)). The remaining Preclusive Orders are also final orders, the most recently entered of these orders have been appealed by one or more of the following parties: the Debtor, the Debtor As Assignee, Rotella and/or Rotella As Assignee.[14]

Application of claim preclusion also requires that the contested matter in the former adjudication involve the same parties or their privies. "For purposes of determining the applicability of *res judicata* . . . identity of interests is

---

[13]The Court notes that four days before filing the Complaint, the Debtor As Assignee filed the First Rule 60(b) Motion which sought to set aside the *Order Approving Lundborg Settlement* in a transparent attempt to escape the *res judicata* effect of the *Order Approving Lundborg Settlement*.

[14]*See* Notices of Appeal [C.P.1761,1765,1769].

equivalent to privity." *In re Medomak Canning*, 922 F.2d 895, 901 (1st Cir. 1990). To the extent that the final Preclusive Orders involved either the Debtor, Rotella, the Debtor As Assignee and/or Rotella As Assignee (or some combination thereof), the movants therein and the Plaintiffs here are identical or in privity. The Debtor As Assignee is in privity with himself and Rotella As Assignee is in privity with himself since their respective interests as assignees are identical to their respective individual interests.

The requirement that the current and former adjudication involve the same causes of action is also satisfied here. "In general, cases involve the same cause of action for purposes of *res judicata* if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Israel Discount Bank, Ltd., v. Entin,* 951 F.2d 311, 315 (11th Cir.1992)(*quoting Citibank, N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1503 (11th Cir. 1990)). "Put another way, they must 'arise out of the same transaction or series of transactions.'" *Id.* (*quoting Justice Oaks II*, 898 F. 2d at 1551). "*[R]es judicata* 'extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" *Piper Aircraft*, 244 F.3d at 1295 (*quoting Olmstead v. Amoco Oil, Co.,* 725 F.2d 627, 632 (11th Cir. 1984)). "'In determining whether

the causes of action are the same, a court must compare the substance of the action, not their form.'" *Israel Discount Bank*, 951 F.2d at 315 (*quoting I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986)). "The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, *res judicata* applies." *Piper Aircraft*, 244 F.3d at 1296.

The Amended Complaint alleges that Lundborg's violation of the automatic stay by taking two appeals in the Bahamas regarding the Cat Cay Property, in conjunction with Lundborg's filing a fraudulent Proof of Claim as part of a deliberate scheme to manipulate the Trustee into entering into an unwarranted settlement, caused the Debtor As Assignee to lose the value of the Estate's interest in the Cat Cay Property that he purchased from the Estate at a sale conducted by this Court on August 25, 2005. These same allegations are alleged to have caused Rotella and Rotella As Assignee to be unable to collect payment for their respective administrative claims.

The substance of the Amended Complaint's allegations i.e., the stay violation allegations and the fraudulent Proof of Claim allegations, have been brought before this Court repeatedly by the Debtor in Debtor's Motion to Strike Claim, Debtor's First Stay Sanctions Motion, Debtor's Second Stay Sanctions Motion; and by Debtor As Assignee and Rotella As Assignee in their First Rule

60(b) Motion, and in their Motion for Reconsideration of the Court's Order Striking First Rule 60(b) Motion. As more fully detailed below, in ruling upon these motions, the Court determined that the Debtor lacked standing to seek the relief requested, and that the claims of the Debtor As Assignee were released by the Trustee prior to the Debtor acquiring the Estate's interest in the Cat Cay Property. As to Rotella and Rotella As Assignee's claims that they hold unpaid administrative claims, the *Order Approving Settlement and Sale* and the *Order Denying Second Rule 60(b) Motion* both show that Rotella credit bid these administrative claims in full and they have been satisfied.

Thus the Court finds that the four requirements for application of *res judicata* are satisfied: 1) the Court had proper jurisdiction; 2) the Preclusive Orders are final orders; 3) the Plaintiffs are identical to, or in privity with, the parties in the former proceedings; and 4) the claims arise out of the same nucleus of operative fact as the former proceedings. The Court therefore finds that the claims raised by Plaintiffs in the Amended Complaint are barred by the principles of claim preclusion.

Alternatively, the issues pertinent to Plaintiffs' claims which have been previously adjudicated by this Court are now the law of the case. Pursuant to the doctrine of law of the case, *by necessary implication* the Court's prior decisions in these

proceedings bar the issues raised by the Plaintiffs in the Amended Complaint.  The *res judicata* effect of the Court's final orders as they impact the Plaintiffs' claims in the Amended Complaint is more fully discussed below.

## IV.  *Debtor As Assignee's Claims Were Released By the Trustee*

A.   *Stay Violation Allegations*

In the Amended Complaint, Debtor As Assignee seeks attorneys' fees, costs and punitive damages for Lundborg's stay violations pursuant to 11 U.S.C. § 362 (k)(1) which states:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.[15]

11 U.S.C. § 362(k)(1).

Although the *Order Determining Stay Violation* found that Lundborg violated the automatic stay through her Bahamian filing of two appeals concerning the Cat Cay Property, the *Memorandum Order* found that the Debtor lacked standing to seek sanctions against Lundborg based upon those stay violations. *See Memorandum Order* at 33-37.[16]  The *Memorandum Order* reasoned that:

---

[15]     The paragraph two exception for an award of punitive damages does not apply in the instant matter. The exception for punitive damages states:
(2) If such violation is based on an action taken by an entity in the  good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

[16] The Response incorrectly argues that the Court lacked jurisdiction when it entered the *Memorandum Order* denying the damage portion of Debtor's First Stay Sanctions Motion. On September 6, 2005, Lundborg filed her Notice

In this case, Debtor's interest in the property was ceded to the Estate when Debtor filed his Chapter 7 petition for relief, and therefore the stay violations could not and did not diminish Debtor's property, increase his burdens, or impair his rights. Thus the Court does not find that Debtor is a person aggrieved by Lundborg's violations of the automatic stay against an interest in property that was owned by the Estate, *not Debtor*, when the stay violations occurred. The damage that may have been caused by the stay violations, if any, was damage to the Estate, not to Debtor. Accordingly, Debtor is without standing to seek sanctions for violation of the stay and Debtor's Stay Sanctions Motion is denied.

*Memorandum Order* at 37.

The *Memorandum Order* further determined that the Trustee, not the Debtor, was the party with standing to seek sanctions for violation of the automatic stay against property of the Estate.

If there had been any damage as a consequence of a stay violation against estate property, it would necessarily have been damage to the estate reflected in additional attorneys' fees incurred by the estate. As the individual charged with protection of the estate for the benefit of creditors, the Chapter 7 trustee is the party with standing to seek damages for violation of the automatic stay against property of the estate.

*Id.* at 35.

As distinguished from the Debtor, the Debtor As Assignee now

---

of Appeal No. 1164, thereby initiating an appeal of the *Order Determining Stay Violation*. The *Order Determining Stay Violation* determined only that Lundborg violated the stay, it made no determination as to damages. This appeal was transmitted to U.S. District Court on March 10, 2006 where it was assigned Case No. 06-80231-CIV-Gold/Turnoff. On March 22, 2006, Judge Gold entered an *Order Closing Case*. Judge Gold's order closed the case without prejudice because the appeal was premature. Thus Plaintiffs' Response wherein Plaintiffs argue that the Court lacked jurisdiction is without merit. Contrary to Plaintiffs' argument, this Court had jurisdiction when it conducted the April 17, 2006 and May 26, 2006 hearings on the damage portion of Debtor's First Stay Sanctions Motion. The Court also had jurisdiction when it entered the *Memorandum Order* on June 20, 2006. Had Plaintiffs believed the Court lacked jurisdiction, it is puzzling that they failed to timely raise the issue.

seeks damages against Lundborg for her having violated the stay by taking two Bahamian appeals concerning the Cat Cay Property. The Trustee however released the Estate's claims against Lundborg prior to the Debtor As Assignee bidding for and acquiring the Estate's interest in the Cat Cay Property. The *Order Approving Lundborg Settlement* provided for mutual releases between the Trustee, the Estate, Lundborg and their *assigns* as stated*:*

> The Trustee, and the Estate, and Ms.Lundborg, mutually release each other and their attorneys, representatives, designees and assigns from any claims, demands, obligations liabilities and causes of action of any kind or character that they may have against each other in or arising from this case, including any claims for possible violations of the automatic stay, from the beginning of the world to the date of this Order.

*Order Approving Lundborg Settlement ¶7; see also Order Striking First Rule 60(b) Motion at 13; Memorandum Order at 16-17.*

The *Order Striking First Rule 60(b) Motion*, further determined that the Debtor As Assignee's claims were derivative of the Trustee and that those claims were released pursuant to the *Order Approving Lundborg Settlement*. *See Order Striking First Rule 60(b) Motion* at 13. Therefore the Amended Complaint's claims by Debtor As Assignee for stay violation damages against Lundborg are also derivative of the Trustee. By necessary implication, Debtor As Assignee's claims as contained in the Amended Complaint were also released pursuant to the *Order Approving Lundborg Settlement.* These claims are now barred from relitigation by the principles of claim preclusion and the doctrine of law of the case.

The *Order Approving Lundborg Settlement* also provided that:

> . . .all injunctions or stays that may exist in this case
> with respect or related to the [Cat Cay] Property or Ms.
> Lundborg or the pursuit or enforcement in the Bahamas of such
> rights, claims or interests shall be dissolved and shall be
> of no force or effect; provided however that Ms. Lundborg
> shall not effect title to the Bahamian Property during the
> earlier of 30 days from this Order or 10 days after entry of
> an Order Approving a Sale of the Bankruptcy Estate's interest
> in the [Cat Cay] Property;

*Order Approving Lundborg Settlement* ¶4.

Thus not only were claims for past actions released, the stay
was dissolved to permit Lundborg to pursue her claims in the
Bahamas respecting the Cat Cay Property.

In addition, the Court notes that the Debtor had full
knowledge that his acquisition of the Estate's interest in the Cat
Cay Property was subject to the claims and appeals of Lundborg.

The *Order Approving Lundborg Settlement* provided that:

> The Trustee <u>shall</u> sell the Bankruptcy Estate's right title
> and interest in and related to the [Cat Cay] property, if
> any, subject to whatever rights, claims and interest may
> exist in the Bahamas in or with respect to the Bahamian
> Property, including, without limitation, all rights, claims
> or interests of Ms. Lundborg, if any, that are currently the
> subject of appeals in the Bahamas.

*Id.* ¶6 (emphasis in original); *Memorandum Order* at 17.

The *Order Approving Settlement and Sale*, drafted by Debtor's
counsel, also noted that funds tendered by Debtor were "in
exchange for Trustee's right, title and interest in [the] Cat Cay
[Property] *to the extent same exists*." *Order Approving Settlement
and Sale* ¶1 (*quoting* March 9, 2005 Settlement Agreement)(emphasis

28

added). Thus the Debtor purchased the Estate's interest, *if any or to the extent same exists,* subject to Lundborg's claims as disclosed in Trustee's Motion to Approve Lundborg Settlement and subject to litigation in the Bahamas as disclosed in open court by Trustee's counsel, Mr. Walsh, prior to Debtor bidding at the August 25, 2005 sale hearing:

> MR. WALSH:    The other aspect of what we're selling is again, subject to liens or claims or encumbrances. Ms. Lundborg does have an order by which she was, again, its Bahamian law and I don't want to use the wrong term, but in effect she was entitled to purchase both the interest of the debtor and the nonfiling spouse in the Bahamas. That order has subsequently been reversed and is currently on appeal by Ms. Lundborg again in the Bahamas.
> Again, we're selling this interest subject to whatever the outcome of that Bahamian appeal may be.

*Order Striking Rule 60(b) Motion* at 25 *(quoting* August 25, 2005 Transcript at p.26 [C.P.1184])

As previously stated by the Court, if the Debtor As Assignee wasn't "willing to accept the risk that Lundborg might prevail on appeal in the Bahamas, [he] shouldn't have acquired the Cat Cay Property." *Order Striking Rule 60(b) Motion* at 26.

B.    *Fraud Allegations*

Plaintiffs' arguments that Lundborg engaged in a fraudulent scheme by filing a fraudulent Proof of Claim to obtain an unwarranted settlement with Trustee is also barred by claim preclusion and law of the case. The substance of the fraud

29

allegations were brought before the Court in Debtor's Motion to
Strike Claim. The *Memorandum Order* determined that the Debtor
lacked standing to object to, or move to strike, Lundborg's Proof
of Claim. *See Memorandum Order* at 18-28. The *Memorandum Order*
noted that it was the Trustee's role to examine and object to
claims, not the Debtor's. The *Memorandum Order* also noted that
Debtor's Motion to Strike Claim had been rendered moot pursuant
to the *Order Approving Lundborg Settlement* which stated that "the
withdrawal of Lundborg's Proof of Claim, which 'resolves the
Trustee's Objection and Motion and moots any other objections to
her Proof of Claim.'" *Id.* at 16 and 28 (*quoting Order Approving
Lundborg Settlement* at ¶1).

The fraud allegations contained in Debtor's Motion to Strike
Claim were repeated "nearly verbatim" and expounded upon by Debtor
As Assignee and Rotella As Assignee in their First Rule 60(b)
Motion. *See Order Striking First Rule 60(b) Motion* at 11. Those
allegations are presented once again in the Amended Complaint. The
*Order Striking First Rule 60(b) Motion* determined that:

> . . .the substance of the allegations are not new. The Rule
> 60(b) Movants [Plaintiffs here] failure to raise the
> allegations contained in the Rule 60(b) Motion in their
> respective capacities as "assignees" at the August 10, 2005
> Hearing[,] by a timely filed motion for rehearing or by a
> timely filed appeal does not provide grounds pursuant to Rule
> 60(b)(3) to set aside a final order of the Court entered one
> year ago.

*Id.* at 11.

The *Order Striking First Rule 60(b) Motion* further stated:

30

> Even if all of the allegations in the Rule 60(b) Motion are
> true, the Rule 60(b) Movants [Plaintiffs here] were not
> prevented from presenting their case by any fraud,
> misrepresentation or other misconduct of Lundborg.

*Id.* at 10.

Thus based upon the same fraud allegations advanced in
Debtor's Motion to Strike Claim, the Plaintiffs attempted in their
First Rule 60(b) Motion to set aside the *Order Approving Lundborg
Settlement* which provided for the release of Lundborg from claims
by the Estate. The Trustee's Motion to Approve Lundborg Settlement
was approved by the Court after a properly noticed, full and fair
hearing. Indeed, the *Order Striking First Rule 60(b) Motion*
details how the Court painstakingly went through the Stipulation
line by line at the hearing, thereby affording anyone who wished
an opportunity to raise any objection. *See Order Striking First
Rule 60(b) Motion* at 14-16. By virtue of Debtor's having earlier
filed the Motion to Strike Claim, Plaintiffs knew the substance
of the fraud allegations at the time of the hearing on Trustee's
Motion to Approve Settlement. Yet Plaintiffs failed to raise any
objection based upon the fraud allegations at that hearing. *See
Order Striking First Rule 60(b) Motion* at 10-11. In the Court's
view, Rotella's failure to timely raise the fraud allegations in
opposition to Trustee's Motion to Approve Lundborg Settlement was
a tactical decision as part of a larger strategy to enable Debtor
and Rotella to purchase the Estate's interest in the Cat Cay

Property without objection from Lundborg.[17] *See Order Striking First Rule 60(b) Motion* at 13-26. Thus the Plaintiffs could have raised the fraud allegations in opposition to Trustee's Motion to Approve Lundborg Settlement but they did not. Plaintiffs having chosen not to timely raise the fraud allegations at the August 10, 2005 hearing on Trustee's Motion to Approve Lundborg Settlement, are precluded from raising them now.

**V.   *Rotella and Rotella As Assignee's Claims Were Satisfied***

The Amended Complaint alleges that as a result of Lundborg's automatic stay violations and as a result of Lundborg's allegedly fraudulent conduct regarding her Proof of Claim, Rotella and Rotella As Assignee now own uncollectible and unpaid administrative claims for attorneys' fees.  Rotella and Rotella As Assignee seek damages against Lundborg pursuant to 11 U.S.C. § 362(k)(1), 11 U.S.C. § 105(a), and the Court's inherent power.

"[U]nder § 362[(k)(1)]. . . the term 'individual' is limited to natural persons and does not include corporations or other artificial entities." *Jove Eng'g. Inc., v. Internal Revenue Service*, 92 F.3d 1539, 1552-53 (11th Cir. 1996). Thus as a professional association, Rotella is ineligible for stay violation

---

[17] Indeed despite having been given multiple extensions of time to file a response in this matter and despite the Court's statement that it would view the fraud allegations as true and take all reasonable inferences thereof in favor of the Plaintiffs, Plaintiffs decided to file a "partial' Response that is **unresponsive** to the Motion for Summary Judgment's legal arguments. Whether or not Plaintiff's decision is again part of some larger litigation strategy, the Court is satisfied that Plaintiffs have had a full and fair opportunity to oppose the Motion for Summary Judgment.

damages pursuant to 11 U.S.C. § 362(k)(1). "Unlike individuals, corporations are still limited to the discretionary remedies of §105." *Id.* at 1552. While 11 U.S.C. § 105 (a) enables the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]", the relief requested by Rotella and Rotella As Assignee is unwarranted because their administrative claims have been satisfied.

Rotella's credit bidding of the full amount of his administrative claims was discussed in the Court's *Order Denying Second Rule 60(b) Motion*:

> On September 1, 2005, the Court entered [the *Order Approving Settlement and Sale*] which approved sale of the Estate's interest in the Cat Cay Property to Debtor and Rotella. The *Order Approving Settlement and Sale* states at paragraph 3:
>
>> Mr. Rotella has informed this Court that the Debtor will pay the difference between Fifty Six Thousand Dollars and No/100 ($56,000.00) and the said amount of Fifty Thousand Dollars and No/100 ($50,000.00) and has additionally applied Rotella, P.A.'s entitled credit allowance of Seven Hundred Fifty Seven Thousand Forty Four Dollars and 71/100 ($757,044.71)[18] consistent with the Court's previous Orders to said amount elevating the Debtor's offer to purchase the Cat Cay Property, to the amount of Eight Hundred Thirteen Thousand Forty Four Dollars and 71/100 ($813,044.71) which is accepted as the highest and best offer by this Court.
>
> At the August 25, 2005 hearing, the Court approved the settlement between the Trustee and the Debtor and then conducted a sale of the Estate's interest in the Cat Cay Property. Counsel for Trustee announced that there were two parties bidding, Rotella and counsel for Susan Lundborg ("Lubell"). After Lubell offered $150,000, the Court noted that:

---

[18]This amount represents the total of the Rotella Administrative Claim of $220,492.35 and the Ferrell Administrative Claim of $536,552.36.

> THE COURT:     ....any proposed counter offer by Mr.
> Lubell, or Ms. Lundborg I should say, is really moot,
> unless she is offering more than Mr. Rotella's
> administrative claim. Therefore, I will approve the
> sale.
>                     * * *
>
> MR. ROTELLA:    Next, Judge, so that the record is
> complete, the offer, with the subordination totals
> $813,044.71.

*Order Denying Second Rule 60(b) Motion* at 3-4 (*quoting* August 25, 2005 Transcript at p.42-43 [C.P.1184]).

The *Order Denying Second Rule 60(b)Motion* determined that the *Order Approving Settlement and Sale* accurately reflected the proceedings and the Court's ruling, despite Debtor and Rotella's arguments in their Second Rule 60(b) Motion: 1) that Rotella's credit bid of $757,044.71, the entire amount of both the Rotella Administrative Claim and the Ferrell Administrative Claim, was gratuitous; and 2) that the *Order Approving Settlement and Sale* was drafted in error by Rotella. The Court denied Rotella's request to reduce his and Debtor's offer to $56,000 from $813,044.71 by modifying the *Order Approving Settlement and Sale* one year after entry of said order.

Thus even if all of the allegations in the Amended Complaint are true, Rotella and Rotella As Assignee are not unpaid administrative claimants. The Rotella Administrative Claim and the Ferrell Administrative Claim were credit bid in full, the offer was accepted as the best and highest offer for the Estate's interest in the Cat Cay Property, and the administrative claims

34

have thus been satisfied. Rotella and Rotella As Assignee's suit as unpaid administrative claimant for damages against Lundborg as alleged in the Amended Complaint is barred by claim preclusion and the law of the case.

The Court notes that this is not the only occasion that Rotella has attempted to modify the value and/or satisfaction of his administrative claims to support whatever his position was in the dispute *de jour*. The *Memorandum Order* noted than in an effort to create standing for Debtor to object to, or move to strike, Lundborg's Proof of Claim, Rotella argued that the administrative claims were worth only some *de minimus* fraction of $757,044.71. The *Memorandum Order* judicially estopped Rotella from taking an inconsistent position on the value of his administrative claims. *Memorandum Order* at 30. The *Memorandum Order* stated:

> Debtor's Closing Argument quotes the transcript from the August 25, 2005 hearing on Trustee's Motion to Approve Sale wherein the Court ruled that Lundborg's cash offer of $150,000 was "moot unless she is offering more than Mr. Rotella's administrative claim." August 25, 2005 Hearing Transcript at 42 [C.P.1184]. Rotella simply cannot have it both ways, the equitable doctrine of judicial estoppel will not allow it. His credit bid cannot be maximized to freeze out other bidders at the sale and then minimized for the purpose of showing that there would have been a surplus in the estate to confer standing upon Debtor to seek sanctions against Lundborg for having filed an allegedly fraudulent proof of claim.
>
> * * *
>
> It would also be inequitable for the Court to be persuaded to award Rotella an administrative claim, and then allow Rotella to waive the administrative claim in order to create standing to pursue collection of that claim through Rotella's Pending Sanctions Motions.

*Id.* at 31-32.

The Court did not entertain Lubell's cash offer of $150,000 to purchase the Estate's interest in the Cat Cay Property based upon Rotella bidding $56,000 in cash and credit bidding the full amount of his administrative claims of $757,044.71 for a total offer of $813,044.71. Thus while Rotella fully credit bid his administrative claims to successfully freeze out Lubell's bidding for the Estate's interest in the Cat Cay Property, Rotella later argued that the claims were worth a small fraction of their face amount in an effort to show that there would be a surplus in the Estate that would confer standing on Debtor to object to, or move to strike, Lundborg's Proof of Claim. Rotella having credit bid the full amount of his administrative claims *now maintains* that he is an unpaid administrative claimant. Not only is Rotella judicially estopped from taking an inconsistent position by representing himself as the holder of unsatisfied administrative claims, his claims for damage against Lundborg are barred by the principles of claim preclusion and law of the case.

Even if Rotella and Rotella As Assignee's claims were not satisfied, the Court would not exercise its discretion pursuant to 11 U.S.C. § 105(a) or the Court's inherent power to award damages for the same equitable reasons stated in the *Memorandum Order*. *See Memorandum Order*: "The Equities of this Contested Proceeding" at 29-33.

The *Order Striking First Rule 60(b) Motion* noted that "this case has not only been over-litigated, it has been marked by continued attempts by the non-prevailing party to relitigate issues previously determined by final orders of this Court." *Order Striking First Rule 60(b) Motion* at 2. The Amended Complaint is but one more attempt to relitigate issues previously determined by this Court and one more enormously wasteful exercise of the Court's resources and everyone else's time, effort, and money.

The material facts of this matter are not in dispute and entry of summary judgment in favor of Lundborg is appropriate as a matter of law. The record establishes that Rotella and Rotella As Assignee's administrative claims were fully credit bid and have thus been satisfied. The Amended Complaint is barred by *res judicata.*

## CONCLUSION

The material facts are not is dispute. As discussed above, the principles of claim preclusion and/or law of the case bar Plaintiffs' prosecution of the Amended Complaint. Defendant is entitled to summary judgment as a matter of law.

## ORDER

The Court having reviewed the submissions of the parties, the applicable law, having taken judicial notice of the record and the proceedings in this case hereby:

37

**ORDERS AND ADJUDGES** that Defendant's Motion for Summary Judgment is **Granted** and the Amended Complaint is **Dismissed.**

###

Copies Furnished to:

Gary J. Rotella, Esq.

Aviva Wernick, Esq.

John Walsh, Esq.

AUST